# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHALVA AKHALKATSI,**<br>*Petitioner*,<br><br>**v.**<br><br>**J.L. JAMISON, WARDEN OF PHILADELPHIA FEDERAL DETENTION CENTER, et al,**<br>*Respondents*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO. 26-8068** |

## ORDER

**AND NOW**, this 30th day of October 2026, upon consideration of Petitioner Shalva Akhalkatsi's, ("Petitioner"), *petition for writ of a habeas corpus pursuant to 28 U.S.C. § 2241*, (ECF 1), Respondent's (the "Government"), response in opposition, (ECF 6), and Petitioner's reply, (ECF 7), it is hereby **ORDERED** that the petition for *writ of habeas corpus* is **GRANTED**, as follows:[1]

---

[1] Petitioner Shalva Tangizovich Akhalkatsi is a 51-year-old citizen of Georgia, who has lived in the United States for more than twenty-two years. (ECF 1, at 1). He entered the United States lawfully in 2004, has no history of violent or dangerous crimes, though he has been arrested and convicted of lesser offenses, is married to a United States citizen, and has a pending application to become a lawful permanent resident. (*Id.* at 1–2; ECF 6, at 2; ECF 6-3). The United States Immigration and Customs Enforcement, ("ICE"), recently arrested and detained Petitioner without any individualized determination of whether he presents a danger or flight risk and now seeks to remove him from the United States before his application for lawful permanent resident status is determined. (*See* ECF 6-1, at 3). However, as the Court explains below, ICE's detention of Petitioner is unlawful and, therefore, his petition is granted.

*Background*

On March 31, 2004, Mr. Akhalkatsi lawfully entered the United States as a nonimmigrant visitor after being inspected and admitted at a port of entry in California. (ECF 1-5, at 60). He was authorized to stay in the United States through September 30, 2004, but has remained in the country since his entry. (*Id.*). He resides in Philadelphia with his wife — a United States Citizen — who he married in January 2025. (*Id.*). After Petitioner's wedding, he filed Form I-485 with United States Citizenship and Immigration Services, ("USCIS"), seeking lawful permanent resident status as his wife's immediate relative. (*Id.*; ECF 1-4). USCIS scheduled Petitioner for an interview at its Philadelphia office on October 21, 2026. (ECF 1-5, at 60).

As scheduled, Petitioner reported to the Philadelphia USCIS office and, at approximately 10:30 a.m., ICE officers arrested Petitioner pursuant to an immigration arrest warrant signed by a Department of Homeland Security, ("DHS"), deportation officer, alleging that Petitioner had overstayed his visa and was subject to removal. (ECF 6-2, at 3; 6-4). Approximately two-and-a-half hours after arresting Petitioner,

DHS determined that he would remain in custody and informed him that he could seek review of that custody determination. (ECF 6-5). DHS did not provide any reasons for its custody determination, (*see id.*), and the Government has not offered any reasons in its response brief, (*see* ECF 6). In its I-213 record of Mr. Akhalkatsi, DHS notes that he has a history of police encounters, *to wit*: a 2015 arrest for use/possession of drug paraphernalia and false identification to a law enforcement officer, charges to which Petitioner pled guilty and for which he served one year of probation; arrests in 2014 and 2017 for property crimes, the charges for which were withdrawn; and a 2017 arrest for purchase of a controlled substance, the charge for which was also withdrawn. (ECF 6-2, at 4; *see also* ECF 6-3). Notably, DHS made no argument about this criminal history and whether it indicated that Petitioner was a danger or a flight risk. (*See* ECF 6-2).

Petitioner signed the notice of custody determination that DHS provided him and requested review of the decision to hold him in custody. (ECF 6-5). However, there is no indication that the Government has scheduled such a review, or even attempted to do so, and the Government offers no explanation for this lack of review. (*See id.*; ECF 6, at 2–3). Instead, the Government has scheduled a removal hearing for Petitioner on November 2, 2026. (ECF 6-1).

In his underlying petition, Mr. Akhalkatsi argues that his detention violates the Immigration and Nationality Act, ("INA"), his constitutional due process rights under the Fifth Amendment of the United States Constitution, the Administrative Procedure Act, ("APA"), and the *Accardi* doctrine. (ECF 1, at 8–9). As such, Petitioner seeks immediate release and an injunction preventing the Government from detaining him again during the pendency of his immigration proceedings absent a material change in circumstances and an individualized determination that such detention is justified; or, in the alternative, a constitutionally adequate bond hearing. (*Id.* at 9–10).

In its response, the Government contends, *inter alia*, that Petitioner has been lawfully detained pursuant to 8 U.S.C. § 1226(a); that Petitioner has failed to exhaust the administrative remedies required to challenge his detention under § 1226(a) — requesting a bond hearing and appealing the result, if necessary, to the Board of Immigration Appeals, ("BIA"); that Petitioner's APA claim fails because the APA does not authorize review of discretionary custody determinations by ICE; and that Petitioner's detention does not violate the APA or the *Accardi* doctrine because ICE acted in accordance with the INA and its implementing regulations when it arrested and detained Petitioner. (ECF 6, at 5–13).

*Discussion*

As Petitioner argues in his reply, (ECF 7), this case is similar to *Figueroa Castro v. Warden*, where this Court determined that a non-citizen's detention pursuant to § 1226(a) violated the INA and the non-citizen's Fifth Amendment right to due process where ICE had detained him without an individualized determination of whether Petitioner presented a danger or flight risk. *See Figueroa Castro v. Warden*, No. 26-CV-7526, ECF 6 (E.D. Pa. Oct. 8, 2026). This Court finds that the instant case presents similar circumstances and, as in *Figueroa Castro*, also finds that Petitioner's detention violates the INA and the Fifth Amendment's due process clause.

*A. Immigration and Nationality Act Violation*

As noted, the Government argues that Petitioner is detained pursuant to § 1226(a). Specifically, § 1226(a) provides: "On a warrant issued by the Attorney General, [a non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This section "establishes a discretionary detention framework." *Dos Reis v. McShane*, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) (citing *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906

F.3d 274, 279 (3d Cir. 2018)); *see also Regalado-Nauta v. Jamison*, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026) ("Detention under Section 1226(a) is discretionary."). That is, § "1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223, at *1 (3d Cir. Aug. 28, 2026) (citing 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1236.1(c)(8)). "The statute's implementing regulations" effectuate this intent by "establish[ing] a framework for initial custody determinations and subsequent review by an immigration judge and the [BIA]." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citing 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1)). This framework includes "a right to an individualized detention determination and a bond hearing." *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)). "The initial custody determination requires an individualized determination as to whether the non-citizen is a danger to property or persons and is likely to appear for any future proceeding." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citation modified) (quoting *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 492–93 (S.D.N.Y. Aug. 13, 2025)).

Here, there is no indication or evidence that the Government made any such determination. Rather, the exhibits included with the Government's response indicate only that DHS alleges Petitioner is not a citizen or national of the United States, but rather a citizen of Georgia; that Petitioner entered the United States lawfully but remained beyond his period of authorized presence; and that, as a result, DHS believes there is probable cause that Petitioner is subject to removal from the United States. (ECF 6-2; ECF 6-4). These exhibits indicate that Petitioner will be detained pending removal proceedings but provide no rationale for such detention. (ECF 6-5). While DHS has noted that Petitioner has a history of non-violent misdemeanor offenses, they make no argument that this history makes Petitioner a danger or flight risk. (ECF 6-4); *see also Torres Guevara v. Warden of Fed. Det. Ctr. Philadelphia*, 2026 WL 2838542, at *3 (E.D. Pa. Sept. 22, 2026) (finding that DHS's documentation of a non-citizen's past arrests for drug possession and disorderly conduct did not amount to an individualized determination of whether detention was justified where there was no indication the Government had considered this criminal record, and that, even if it had, such past offenses would not render someone a danger or flight risk). Notably, the Government does not contend that DHS made an individualized custody decision before detaining Petitioner. Instead, the Government argues that § 1226(a) does not require such a pre-detention determination. (ECF 6, at 7–8). However, for the reasons discussed above, this argument is unpersuasive. Accordingly, the Government's detention of Petitioner without an individualized dangerousness and flight-risk assessment violates the INA.

The Government also argues that Petitioner has failed to exhaust administrative remedies prior to challenging the lawfulness of his detention. (ECF 6, at 5–7). This argument is unavailing. Petitioner seeks *habeas* relief pursuant to 28 U.S.C. § 2241. (ECF 1). "Section 2241 *habeas* petitioners are ordinarily required to exhaust administrative remedies, but the statute itself contains 'no [explicit] exhaustion requirement.'" *Dos Reis*, 2026 WL 1746649, at *3 (alteration in original) (quoting *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000)). "Exhaustion under § 2241 is therefore prudential." *Id.* (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Such "[e]xhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (citing *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir.1979)).

Here, exhaustion is excused because Petitioner challenges his deprivation of liberty as a violation of the Due Process Clause and further, it is not evident that an administrative remedy is available. *See Dos Reis*, 2026 WL 1746649, at *3. In fact, the record indicates that, despite Petitioner's request for a custody hearing, no hearing has yet been scheduled. (*See* ECF 6, at 2–3; ECF 6-5). While it is unclear whether Petitioner may be obligated to exhaust available remedies, he "need not exhaust unavailable ones," *i.e.*,

those that operate "as a simple dead end." *See Ross v. Blake*, 578 U.S. 632, 643 (2016). The Government repeatedly claims that Petitioner cannot bring the present action without first appearing for a bond hearing and, if necessary, appealing the result to the BIA. (ECF 6, at 4–6, 9). However, the Government offers no explanation of how Petitioner may avail himself of this path to relief when he has already requested a custody hearing and none has been scheduled. Instead, the Government's response to his request is accompanied by a notice of a removal hearing that the Government *has* scheduled for Petitioner for November 2, 2026. (ECF 6-1). Such a discrepancy clearly indicates that the Government can schedule hearings for Petitioner when it so desires; it has just not scheduled the custody hearing Petitioner has requested. This lack of action further suggests that the Government has no intention of scheduling the hearing that it claims Petitioner must exhaust before bringing the instant challenge to his detention. This likelihood is bolstered by the fact that the Federal Detention Center in Philadelphia, where Petitioner is held, (*see* ECF 3 (ordering the Government not to remove Petitioner from that facility during the pendency of this matter)), "does not facilitate bond hearings in any capacity on behalf of ICE detainees." *Melendez-Guzman v. Jamison et al.*, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) (citation omitted). On this record, this Court is not satisfied that administrative remedies are available to Petitioner and finds that no administrative exhaustion is required before Petitioner can challenge his detention as a violation of the INA.

*B. Due Process Violation*

As to Petitioner's constitutional due process arguments, this Court finds that Petitioner's detention violates the Fifth Amendment. The "Due Process Clause of the Fifth Amendment of the United States Constitution applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In the civil immigration detention context, due process requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331–32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context); *Regalado-Nauta*, 2026 WL 2740528, at *3. Courts applying *Mathews* weigh the following factors:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Applying those factors here, this Court concludes that Petitioner's detention without an individualized determination of whether he presents a danger or flight risk violates his right to due process. That is, under the first factor, Petitioner has a critical interest in remaining free from detention, regardless of the length of such detention. *See Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Zadvydas*, 533 U.S. at 690); *Buele Morocho*, 2026 WL 2546223, at *9 (citations omitted) (recognizing that immigration detention implicates the constitutionally protected interest in avoiding physical restraint). Under the second *Mathews* factor, the record reveals no procedures the Government followed that protect Petitioner from an erroneous deprivation of this interest, including the custody hearing that he requested. As the *Buele Morocho* Court held, "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." *See Buele Morocho*, 2026 WL 2546223, at *9 (internal citations omitted); *see also Regalado-Nauta*, 2026 WL 2740528, at *4 (finding that Petitioner's "detention risks erroneously depriving him of his rights because [he] has not yet been provided an opportunity for a neutral decisionmaker to make

an individualized determination as to whether [he] poses a flight risk or a danger to the community."). Considering the third *Mathews* factor, "while the Government has a legitimate interest in preventing the release of dangerous noncitizens and those who fail to appear at future hearings, that interest is not outweighed by the balance of the first and second *Mathews* factors" in this case, particularly where the Government has not assessed whether Petitioner is dangerous or will fail to appear at future hearings. *Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Buele Morocho*, 2026 WL 2546223, at *10). Further, this interest is not even clearly implicated here, as the Government has not argued that Petitioner's criminal record is evidence that he is dangerous and, in any event, Petitioner's criminal record is not recent and is limited to non-violent offenses. *See Serrano v. Lowe*, 2026 WL 2790274, at *3 (M.D. Pa. Sept. 17, 2026) ("Petitioner's criminal record is limited to non-violent offenses, and the Government has provided no evidence to support that he is otherwise a danger to the community.").

*Conclusion*

Accordingly, for the reasons set forth, this Court finds that Petitioner's detention violates the INA and Petitioner's constitutional due process rights. As each of these violations, alone, renders Petitioner's detention unlawful and warrants relief, the Court need not decide whether Petitioner's detention violates the APA and/or the *Accardi* doctrine. However, this Court observes that it found in *Lojano Tigre v. Jamison* that the Government violated the *Accardi* doctrine where it failed to follow regulations governing, *inter alia*, "primary custody determinations executed by ICE under 8 U.S.C. § 1226(a)." 2026 WL 3093160, at *1 n.1 (E.D. Pa. Oct. 14, 2026). On the present record, it is likely the same reasoning would apply here.

"A court . . . entertaining an application for a writ of *habeas corpus*" is empowered to "dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also id.* § 2241(a). "The traditional function of the writ of *habeas corpus* is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Considering the statutory and constitutional violations set forth herein, this Court finds that the law and justice require Petitioner's immediate release.

However, the Court cannot, at this time, grant Petitioner the requested injunction preventing the Government from detaining him again during the pendency of his status adjustment proceedings. (ECF 1, at 9–10). While this Order makes clear that the Government violated the law by detaining Petitioner without an individualized custody determination, the requested injunction would require a much broader finding that it would be unlawful to detain Petitioner during the pendency of his permanent residence application — an argument Petitioner has not developed through the briefing of his Petition. The Court declines to make such a ruling, and issues no injunction.

1. The Government's detention of Petitioner Shalva Akhalkatsi violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment of the United States Constitution;
2. Because Petitioner Shalva Akhalkatsi is in custody in violation of the law and the Constitution of the United States, Petitioner Wilmer Figueroa Castro is to be ***immediately*** released from the Federal Detention Center in Philadelphia, Pennsylvania;
3. The Government is further directed to return to Petitioner Shalva Akhalkatsi any and all funds, forms of identification, and property which may have been seized from him at the time of his arrest on October 21, 2026; and

4. The Government is directed to certify compliance with the Court's Order by filing such certification on the docket by 12:00 p.m. on November 2, 2026.

The Clerk of Court is **DIRECTED** to mark this case **CLOSED**, upon receipt of the Government's certification.

**BY THE COURT:**

*/s/ Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*